**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 06-20682-Civ-LENARD/TORRES

TAMBOURINE COMERCIO
INTERNATIONAL S.A., a Portuguese
corporation, and HAWKSBAY LTD,
an Isle of Man corporation,

      Plaintiffs,

v.

JAY H. SOLOWSKY, ESQ., an individual
residing in Florida, and PERTNOY,
SOLOWSKY & ALLEN, P.A., a Florida
professional association,

      Defendants.

_____/

**ORDER ON DEFENDANT'S MOTION TO DISMISS**
**AND INCORPORATED REPORT AND RECOMMENDATION**

      This matter comes before the Court on Defendant's Motion to Dismiss [D.E. 13]

that was referred for disposition by the Honorable Joan A. Lenard.  The Court has

reviewed the papers filed in this case and is otherwise advised in the premises.  This

motion is ripe for disposition.  For the reasons that follow in this non-dispositive Order,

Defendants' motion to dismiss various claims in the Complaint is Denied.  With respect

to certain claims, Defendants' motion should be Granted, and thus the Order incorporates

a Report and Recommendation as to those claims, pursuant to 28 U.S.C. § 636 and S.D.

Fla. Mag.J. R. 4(b).

*I.  BACKGROUND*

      Jay H. Solowsky, Esq. ("Solowsky") and Pertnoy, Solowsky & Allen, P.A. ("Pertnoy

Solowsky" or the "Firm") (collectively, "Defendants")  move to dismiss Counts I (civil theft),

III (fraud), IV (negligent misrepresentation), V (unjust enrichment), VI (breach of fiduciary duty), VII (professional negligence), and VIII (negligent supervision) of the Complaint.

Plaintiffs, Tambourine Comerico, Internacional S.A.'s ("Tambourine") and Hawksbay Ltd., allege that Defendants mishandled funds that were deposited into the Firm's trust account by the Firm's longtime client, Edward Merrit Reizen.[1]  Over the course of approximately three years, between 1999 and 2001, certain persons within Tambourine's management, especially Reizen, allegedly misappropriated funds belonging to Plaintiffs.  But before Plaintiffs became aware of this, in mid-October 1999, Tambourine – through Reizen – contacted the Firm, through Solowsky, about assisting Tambourine with its investigation of $10 million that Tambourine had entrusted to another entity, Lionheart International Ltd. ("Lionheart"). [*Reizen* D.E. 153 at 3].  Tambourine had transferred $20 million to Lionheart in December 1998.  Compl. at ¶ 20.  In early 1999, Tambourine requested that it be returned; however, Lionheart returned only $10 million. *Id.* at ¶¶ 14, 16.  Tambourine, believing that its funds had been wrongly misappropriated, engaged Defendants to assist in the investigation of the $10 million that Lionheart had not returned.  *Id.* at ¶ 18.

Only approximately one month after Tambourine hired Defendants, Tambourine advised Solowsky that it did not wish to pursue the matter any further, at least with

---

[1]  Plaintiffs have separately sued Reizen.  That lawsuit, which was filed in December 2003, is captioned, *Kobarid Holding, S.A. v. Reizen*, Case No. 03-23269-Civ-Lenard/Klein ("*Reizen*").  Because they are specifically referenced in the Complaint against Solowsky and the Firm, the original Complaint [*Reizen* D.E. 1], the Second Amended Complaint [*Reizen* D.E. 37], the Magistrate Judge's March 31, 2005 Order [*Reizen* D.E. 133], and the District Court's July 19, 2005 Order [*Reizen* D.E. 153], all in *Reizen*, may all be considered on Defendants' Motion to Dismiss.  *See* Compl. at ¶¶ 59, 65, 67, 74, 137 (citing various pleadings and orders in *Reizen*); *see, e.g., Rhodes v. Omega Research, Inc.*, 38 F. Supp. 2d 1353, 1357-58 (S.D. Fla. 1999) (citing *Solis-Ramirez v. United States Dept. of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985)).

Defendants.  It is undisputed that Defendants' representation of Tambourine ended at that time.  Compl. at ¶ 20; [*Reizen* D.E. 153 at 4].

It is the $10 million that Lionheart returned to Tambourine that is the subject of this case.  Plaintiffs allege that, almost as soon as Lionheart returned the $10 million to Tambourine, members of Plaintiffs' managment, including Reizen, spent the next two years transferring the money through a host of accounts in an attempt to defraud Tambourine.  Compl. at ¶¶ 16-23.  Plaintiffs allege that they discovered the wrongdoing in 2002 and hired a new attorney, Joel Weiss, to help search for their missing funds, now totaling over $20 million.  *Id.* at ¶¶ 25, 28.  In March 2003, Weiss contacted Solowsky to obtain a copy of the Firm's Tambourine file from its 1999 representation, and, after being paid for the Firm's prior work for Tambourine that was in arrears, Solowsky provided a copy of his file to Weiss.

Plaintiffs allege that, several months later, on October 20, 2003, Reizen (under the auspices of the Firm's representation of him individually) transferred $6 million of Plaintiffs' missing funds into the Firm's client trust account.  *Id.* at ¶ 31.  Plaintiffs also allege that the money Reizen transferred was recorded as an incoming wire transfer from a bank account referenced as a "Hawksbay/Brenman" account.  *Id.* at ¶ 32.  According to Plaintiffs, Defendants allowed nearly $400,000 of these funds to be disbursed immediately, without advising Plaintiffs, the Firm's former Client, that either the Firm held the tainted funds or that it was disbursing them.  *Id.* at ¶¶ 33-35.

Three days after receiving the $6 million from Reizen into its trust account, on October 23, 2003, Solowsky allegedly contacted Weiss to discuss Plaintiffs' investigation of the missing funds and stated that Reizen and others might be able to assist in the investigation.  *Id.* at ¶ 37.  Solowsky and Weiss spoke again on October 31, 2003; this time, Weiss decided to record the telephone conversation.  *Id.* at ¶¶ 41-42.  According to

the Complaint, in exchange for releases of his clients, Solowsky offered to get Plaintiffs $5 million.  When Weiss asked Solowsky if he knew where the $5 million was, Solowsky allegedly replied, "I can't say.  I do not know at this point."  *Id.* at ¶¶ 47-48.  Plaintiffs allege that this statement was false because, "at that exact time, over $5,500,000 of Plaintiffs' funds was sitting in Defendant's Gibralter [sic] Bank client trust account[.]" *Id.* at ¶ 49.  Plaintiffs further allege that, despite further settlement communications between Weiss and Solowsky, Solowsky did not disclose that it held approximately $5.5 million of Plaintiffs' funds in the Firm's trust account.  *Id.* at ¶ 56.

On December 8, 2003, with the settlement discussions going nowhere, Plaintiffs sued Reizen, alleging that Reizen participated in a complex scheme of unauthorized transfers of Plaintiffs' funds for the purpose of defrauding Plaintiffs.  *Id* at ¶ 59; [*Reizen* D.E. 1].  Notwithstanding their prior short-lived representation of Tambourine in connection the missing $10 million from Lionheart, Solowsky and the Firm appeared as counsel on behalf of Reizen.  *Id.* at ¶64.  Based on Defendants' prior representation of Tambourine and the possibility that Defendants would disclose or use confidential information obtained during that representation in its representation of Reizen, the Magistrate Judge in *Reizen* granted a motion to disqualify Defendants from representing Reizen, which order was affirmed by the District Court.  *Id.* at ¶¶ 67, 74; [*Reizen* D.E. 123, 153].

Plaintiffs allege that it was not until December 2005 that they learned that Reizen had transferred $6 million into Defendants' client trust account in October 2003.  *Id.* at ¶ 76.  Plaintiffs claim that, from 2003 to 2005, a total of approximately $4.6 million was disbursed to various third parties, including $435,000 to the Firm.  *Id.* at ¶ 81.  Plaintiffs allege that, as of December 31, 2005, the trust account contained approximately $1.4 million.  *Id.* at ¶ 85.  As a result, Plaintiffs filed this action in 2006.  Plaintiffs' Complaint

does not allege that Defendants participated in the original misappropriation of their corporate funds.  It does allege that Defendants are liable to Plaintiffs for damages based generally upon Defendants' failure to disclose the fact they had obtained $6 million of Plaintiffs' funds from Reizen, wrongfully converting and misappropriating those funds after receiving them, making certain representations of fact following their receipt of the funds, and representing the alleged wrongdoer against their former Client in the *Reizen* litigation.

## II.   LEGAL STANDARD

A claim must contain a "short and plain statement . . . showing the pleader is entitled to releif . . . ."  Fed. R. Civ. P. 8(a)(2).  The purpose of this rule is to give the opposing parties fair notice of the claim being made and allow them to respond intelligently and to define the scope of issues of discovery and ultimately for trial.  *See, e.g., Chodos v. Federal Bureau of Investigations*, 559 F. Supp. 69, 71 (S.D.N.Y. 1982); *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977); *Prezzi v. Berzak*, 57 F.R.D. 149, 151 (S.D.N.Y. 1972); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1215 (2004). Furthermore, "[e]ach averment of a pleading shall be simple, concise and direct."  Fed. R. Civ. P. 8(e)(1).

Defendants' motion should not be granted unless it appears beyond doubt that Plaintiff could prove no set of facts in support which would entitle it to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Court must take the well-pled factual allegations as true and must read the claims to include any theory on which Plaintiff can recover.  *See Lindner v. Prtacarrero*, 963 F.2d 332, 334 (11th Cir. 1992).  A dismissal under Rule 12(b)(6) "is viewed with disfavor and rarely granted."  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997) (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969)).  *See also Int'l Erectors, Inc. v. Wilhoit Steel Erectors &*

*Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968) ("Dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate.").

### III.   ANALYSIS

#### A.   Count I - Civil Theft

Defendants assert that Plaintiffs cannot maintain their claim for civil theft against Defendants because they have failed to allege sufficient facts showing that Defendants had a felonious intent to steal.  Defendants also assert that, because there is a dispute regarding the funds, the wrongful intent required to sustain a claim for theft is negated. Plaintiffs counter that the allegations in the Complaint satisfy the pleading requirements under Rule 8(a).  Plaintiffs further point out that the Complaint does contain a number of specific facts alleging intentional theft.   In its reply, Defendant counters that throughout the Complaint Plaintiffs cite to the ongoing legal dispute with Reizen over the rightful ownership of the funds deposited into the Firm's trust account.  Defendant argues that the specific allegations regarding the Reizen case control over Plaintiffs' generic allegations of intent, and that these allegations establish that Defendants were merely aware of a dispute regarding ownership of the funds.

Fla. Stat. § 812.014 provides[2]:

(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:

(a) Deprive the other person of a right to the property or a benefit from the property.

(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

---

[2]     In their civil theft count, Plaintiffs also allege a violation of Fla. Stat. § 772.11.  Section 772.11 simply provides for treble damages for a violation of Fla. Stat. § 812.014.

The Complaint tracks the language of the statute.   Specifically, Paragraph 92 of the Complaint states:

> Defendants knowingly obtained and used, or endeavored to obtain or to use, at least $6,000,000 belonging to Plaintiffs, with the intent to temporarily or permanently deprive Plaintiffs of their right to this money or the benefit from this money, and/or to appropriate this money for Defendants' own use or for the use of other persons not entitled to use this money.

Plaintiffs thus aver that Defendants knowingly obtained the $6,000,000 belonging to Plaintiffs with the intent to deprive Plaintiffs of their money and appropriate the same for Defendants' own use.   Compl. at ¶ 92.   This is enough for Plaintiffs to get by the pleading stage of the case because the Court must take the well-pled factual allegations as true and must read the claims to include any theory on which Plaintiff can recover. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992) (citing *Quality Foods de Centro Am. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983)).   *See Colonial Penn Ins. v. Value Rent-A-Car Inc.*, 814 F.Supp. 1084, 1098-99 (S.D. Fla. 1992) (denying motion to dismiss, noting that Plaintiff "need only sufficiently allege rather than prove intent.").

Additionally, Fla. Stat. § 812.022(2) provides that "proof of possession of property recently stolen, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen." *See Chamberland v. State*, 429 So. 2d 842, 843 (Fla. 4th DCA 1983); *Jackson v. State*, 736 So. 2d 77, 83-85 (Fla. 4th DCA 1999).   As long as Plaintiffs allege that Defendants were in possession of stolen goods, which they do in paragraph 31 of the Complaint, section 812.022(2) shifts the burden to the Defendants to prove that they did not know that the $6,000,000 were stolen.   Accordingly, the Court finds that Plaintiffs have sufficiently alleged the requisite intent to withstand a motion to dismiss on this claim.

Defendants argue that there is currently a dispute regarding the ownership of the funds and cite to paragraphs 59 and 64 through 74 of the Complaint. The Court finds that these paragraphs do not per se establish that there is a "dispute over the ownership of the funds" as Defendants contend. Defendants implicitly urge the Court to read into the Complaint such an allegation from Plaintiffs' mention of settlement negotiations. If one looks at these allegations from the Plaintiffs' perspective, however, Defendants may have attempted to settle the lawsuit on behalf of their client against their former client, without claiming ownership of the funds and knowing that the funds were recently misappropriated. In such an instance, the Court cannot find as a matter of law that there is a genuine "dispute over the ownership of the funds" that would negate the intent required under the statute. In other words, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46; *Sherleigh Assoc., LLC v. Windmere Durable Holdings, Inc.*, 178 F. Supp. 2d 1255, 1268 (S.D. Fla. 2000). As the Court held in *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), "[t]he issue is not whether the plaintiff will ultimately prevail but whether a claimant is entitled to offer evidence to support the claims."

On summary judgment, of course, the Court can then consider the entire record to determine if a genuine issue of fact truly exists with respect to this issue.

### B.    *Count III & IV - Fraud & Negligent Misrepresentation*

Defendants move to dismiss count three for fraud and count four for negligent misrepresentation, arguing that Plaintiffs have not alleged that Defendants knew or ought to have known of the falsity of any representations or omissions or that Plaintiffs actually and justifiably relied upon the alleged misrepresentations or omission. Plaintiffs counter that the Complaint contains explicit allegations regarding Defendants' knowledge, or

stating that Defendants should have known, the falsity of their representations to Plaintiffs.

Under Florida law, the elements of a cause of action sounding in fraud are: (1) a false statement of fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representations; and (5) resulting damage to the plaintiff. *Stowell v. Ted S. Finkel Inv. Serv., Inc.*, 641 F.2d 323, 325 (5th Cir. Unit B 1981) (citations omitted); *see also Elders v. United Methodist Church*, 739 So. 2d 1038, 1042 (Fla. 3d DCA 2001). Additionally, Plaintiffs must satisfy the particularity requirements of Fed. R. Civ. P. 9(b). *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997). This includes alleging what is known as the who, what, when, where and why of the alleged fraud.

The difference between a fraud claim and one for negligent misrepresentation is the second element. To state a claim for negligent misrepresentation, rather than allege actual knowledge of the falsity of the representation, a plaintiff must allege that the defendant "either know[s] of the misrepresentation, make[s] the representation without knowledge as to its truth or falsity, or . . . make[s] the representation under circumstances in which he ought to have known of its falsity." *Atlantic Nat'l Bank of Fla. v. Vest*, 480 So. 2d 1328, 1331-32 (Fla. 2d DCA 1985).

### 1. *Knowledge*

With respect to the knowledge prong of these causes of action, the Complaint makes the following relevant allegations: "In early 2003 . . . [Plaintiffs' counsel] Weiss contacted Solowsky to . . . inform Solowsky that he had been retained by Plaintiffs' new management to recover the lost funds. Compl. at ¶ 28. Paragraph 32 of the Complaint then states: "The nearly $6,000,000 deposit into Defendants' IOTA client trust account

was recorded as an incoming wire transfer from a bank account referenced as a 'Hawksbay/Brenman' account."  Paragraph 33 of the Complaint states:

> Despite knowing that Plaintiffs --including Hawksbay--were searching for their funds and would claim an interest in these deposited funds, Defendants did not inform Plaintiffs or Weiss of this $6,000,000.00 deposit into Defendants' IOTA client trust account, and intentionally or negligently concealed this transaction from Plaintiffs and their representatives.

Finally, paragraph 49 of the Complaint states:

> Solowsky's denial of his knowledge of the location of the $5,000,000 was knowingly false and deceptive, because at that exact time, over $5,500,000 of Plaintiffs' funds were sitting in Defendant's [sic] Gibralter [sic] Bank client trust account, controlled by the Defendants.

Given these allegations, the Court finds that Defendants have sufficiently alleged the "knew" or "should have known" element of their fraud and negligent misrepresentation claims.

### 2.  *Justifiable Reliance*

With respect to this necessary element for a fraud claim, a different conclusion must be drawn.  Florida case law is clear that reliance is an essential element of a claim for fraud even when the claim is based on a misrepresentation.  *See Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999); *Foreline Sec. Corp. v. Scott*, 871 So. 2d 906, 910 (Fla. 4th DCA 2004).  Reliance requires a plaintiff to establish that, but for the alleged misrepresentation or omission, the plaintiff would not have entered into the transaction at issue.  *Id.*; *see also State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1213-14 (Fla. 5th DCA 1995) ("Fraud requires inducing a person to take an action he has no obligation to take, nor intent to take without the misrepresentation." ).

Failure to allege how a plaintiff relied on the alleged misrepresentations or omission requires dismissal.  *Stowell*, 641 F.2d at 325 (affirming dismissal and explaining that the plaintiff "has failed to show how the alleged misrepresentations were material or how he

relied upon them to his detriment"); *see also TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879-80 (Fla. 4th DCA 2000) (affirming dismissal of fraud claim for failing to allege reliance). Additionally, any alleged reliance must be reasonable or "justifiable." *Joseph v. Liberty Nat'l Bank*, 873 So. 2d 384, 388 (Fla. 5th DCA 2004) (listing justifiable reliance as element of fraud); *Schopler v. Smilovits*, 689 So. 2d 1189, 1190 (Fla. 4th DCA 1997) (emphasizing importance of element).

Defendants argue that Plaintiffs have failed to allege either actual or justifiable reliance because they do not specify how Plaintiffs relied on the alleged misrepresentations. Defendants further argue that the lawsuit filed against Reizen weeks after Solowsky represented to Plaintiffs that he did not know the location of Plaintiffs' missing funds is evidence that Plaintiffs did not rely on Defendants' alleged misrepresentations.

Importantly, the *Reizen* Second Amended Complaint alleges that Plaintiffs learned about the Tambourine and Hawksbay transactions in connection with the $20 million in late 2002 and that Plaintiffs demanded that Reizen provide information about the investments and the location of the missing funds. [*Reizen* D.E. 37 at ¶¶ 69, 70]. These allegations show that Plaintiffs knew that their interests were adverse to Reizen's at least since late 2002. Once Solowsky and the Firm began representing Reizen in this matter, Plaintiffs' relationship with Defendants became adversarial despite their former attorney-client relationship. It is at this juncture, Defendants argue, that Plaintiffs' alleged reliance on Defendants' representations becomes unreasonable given the clearly adversarial relationship of the parties. The Court agrees.

As a matter of law, reliance is not justifiable when the parties are in adverse relationships. *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1118 (11th Cir. 1999) (affirming dismissal of claim because reliance was not justifiable where parties were in adverse

relationships); *Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir. 1984) (affirming the dismissal of the fraud claim because, "[w]hen negotiating or attempting to compromise an existing controversy over fraud and dishonesty[,] it is unreasonable to rely on representations made by the allegedly dishonest parties."); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1304 (11th Cir. 2003) (quoting and citing *Mergens* and *Pettinelli*); *Jankovich v. Bowen*, 844 F. Supp. 743, 747-48 (S.D. Fla. 1994) (granting Rule 12(b)(6) motion to dismiss fraud and negligent misrepresentation claims for failure to allege justifiable reliance because the parties were adverse and one had accused the other of misappropriation) (citing *Pettinelli*); *Pepper v. First Union Nat'l Bank of Fla.*, 605 So. 2d 1016, 1017 (Fla. 1st DCA 1992) (holding that mortgagor could not be liable to mortgagee for fraudulent inducement due to antagonistic relationship that existed between parties prior to execution of agreement); *see also Chapman Children's Trust v. Porter & Hedges, LLP*, 32 S.W.3d 429, 443 (Tex. Ct. App. 2000) (stating that non-client's reliance upon attorney's representation would not have been justified due to adversarial nature of relationship); .

In a footnote, Plaintiffs argue that the existence of an adverse relationship does not automatically preclude justifiable reliance at the initial pleading stage; rather, an adverse relationship is only one factor to consider in the court's balancing of facts. Plaintiffs do not, however, plead other factors that would raise a factual dispute that their reliance was justifiable. Although Plaintiffs point to their former attorney-client relationship with Defendants, Solowsky's role as an officer of the court, and Defendants' repeated assurances of their trustworthiness and honesty as factors weighing in favor of the Court finding their reliance justifiable, these generic and intangible factors simply do not sufficiently overcome the significance of the adversarial relationship between the parties that leaps out of Plaintiff's own Complaint. Accordingly, the Court finds that, as pled,

Plaintiffs' alleged reliance on Defendants' representations regarding the location of the missing funds was not justifiable.  And absent specific factual allegations that cure this defect, Plaintiffs' fraud and negligent misrepresentation claims must be dismissed as a matter of law.  Given that these claims may be disposed of on these grounds, the Court need not address Defendants' other arguments in support of dismissal.

### C.    _Count V - Unjust Enrichment_

Defendants move to dismiss Plaintiffs' unjust enrichment claim on the grounds that Plaintiffs fail to allege what benefit was conferred on Defendants; that, if any benefit was conferred, Defendants performed services to earn the money; and that Defendants did not have knowledge that Plaintiffs, as opposed to Reizen, conferred a benefit on them. Plaintiffs counter that the $435,000 in attorneys' fees that were paid to Defendants from Plaintiffs' money is the benefit that was conferred on Defendants.  Plaintiffs further argue that Defendants did not perform any services on behalf of Plaintiffs to earn any of the $435,000 paid out of Plaintiffs' funds.

> Under Florida law, the elements of an unjust enrichment claim are as follows:
>
> (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

_Merkle v. Health Options, Inc._, 940 So. 2d 1190, 1199 (Fla. 4th DCA 2006) (citing _Hillman Constr. Corp. v. Wainer_, 636 So. 2d 576 (Fla. 4th DCA 1994)).

Paragraphs 31 and 32 of the Complaint allege that Reizen transferred $6,000,000 of Plaintiffs' funds to Defendants' IOTA client trust account and that the transaction was recorded as an incoming wire transfer from a bank account referenced as a "Hawksbay/Brenman" account.  Paragraph 51 of the Complaint states that Solowsky knew that Plaintiffs claimed an interest in the funds being held in Defendants' client trust

account.  Paragraph 81 of the Complaint then alleges that Defendants allowed $4,662,910 of Plaintiffs' money to be disbursed to various third parties, including the Firm, which received $435,000.  Paragraph 82 of the Complaint alleges that the Firm has not performed any services on behalf of Plaintiffs to earn any of that money.  Last, paragraphs 121 and 122 allege that Defendants accepted and still retain the money and that it would be inequitable for Defendants to retain the benefit of Plaintiffs' funds.

Based on these allegations, it is clear that Plaintiffs *do not* have an unjust enrichment claim.  Plaintiffs fail to ever allege that they conferred a benefit on Defendants (as opposed to Reizen).  In *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Florida*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996), a bank asserted an unjust enrichment claim against other lenders seeking to recover alleged overpayments of principal and interest that the borrower[3] had distributed to the defendants.  The court found that any payment that was conferred upon the defendant lenders in the form of overpayments could only been conferred upon them by the borrower, not the plaintiff.  *Id.*  Similarly here, Plaintiffs claim fails because the Complaint alleges that only Reizen conferred a benefit on Defendants in this instance.

Plaintiffs' claim in this instance is a square peg trying to fit through a round hole.  An unjust enrichment claim is a quasi-contractual claim that is intended to apply to situations where equity would dictate that a party benefitting from contractual-type performance of another should pay fair value for that benefit.  There is nothing "contractual" about the pending complaint.  It is, instead, premised on tortious conduct

---

[3]    The borrower in this case was Southeast Bank, another banking institution, which recruited the plaintiff and the defendants to help fund 49% of a loan it made to a developer.  Southeast Bank entered into individual, separate participation agreements with each of the five lenders.  Under the participation agreements, Southeast had a duty to receive payments of principal, interest, and fees from the developer and remit payment to each participant lender in accordance with its proportionate share.  *Id.* at 877.

by a party that engaged in wrongdoing by facilitating another's misappropriation of funds. And, it is alleged, this wrongdoing party did so in breach of fiduciary duties owed to the injured party that caused damage. The factual allegations indeed are the antithesis of a quasi-contractual and equitable relationship. The claim for unjust enrichment must fail, *unlike* the claim that follows.

### D.     ***Count VI - Breach of Fiduciary Duty***

Defendants move to dismiss Plaintiffs' breach of fiduciary duty claim, arguing that Defendants' representation of Plaintiffs only lasted one month – from mid-October 1999 until mid-November 1999. Defendants also point out that their representation of Plaintiffs took place nearly four years before Reizen transferred the funds at issue into the Firm's client trust account.

The elements of a cause of action for breach of fiduciary duty are as follows: (1) the existence of a fiduciary duty, (2) the breach of that duty, and (3) damages proximately caused by the breach. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). An attorney obviously owes a fiduciary duty to his or her client. *Williams v. Hunt Bros. Constr., Inc.*, 475 So. 2d 738, 741 (Fla. 2d DCA 1985). Plaintiffs allege that Defendants owed them a fiduciary duty, arising out of Defendants' legal representation of Plaintiffs and their receipt and possession of Plaintiffs' funds in Defendants' client trust accounts. Compl. at ¶ 124. Plaintiffs further allege that Defendants breached this duty in a number of ways, including converting the funds to their own benefit and the benefit of third parties, misrepresenting the location of the funds, failing to advise Plaintiffs of Defendants' conflict of interest, agreeing to represent Edward Reizen in litigation adverse to Plaintiffs, failing to safeguard and segregate Plaintiffs' funds, and failing to deliver Plaintiffs' funds upon demand. Compl. at ¶¶ 128, 129. Plaintiffs claim that Defendants' breaches of fiduciary duty proximately caused them damages. Compl. at ¶ 131.

Defendants cite *Hunter v. State*, 770 So. 2d 232, 235 (Fla. 4th DCA 1991), for the proposition that "there is no blanket continuing duty of loyalty by the mere fact of some representation . . . ." Yet *Hunter* also states that "[e]ach case must be reviewed on its specific facts and circumstances." *Id.* In *Hunter*, for example, the court found that the public defender who was seeking to withdraw as counsel did not have a conflict of interest where the former representation had only entailed two plea conferences and no privileged information was implicated. Furthermore, the former client would not even be called as a witness during the trial. *Id.* at 233, 235.[4]

Although Defendants' representation only lasted approximately one month, if their representation during that time was sufficiently material, Defendants could have a continuing duty of loyalty to Plaintiffs, at least when it concerns a substantially related matter. *See Williams*, 475 So. 2d at 741 ("The term 'fiduciary or confidential relation,' is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused – in which confidence has been reposed and betrayed.") (citing *Quinn v. Phipps*, 113 So. 419, 420-21 (1927)). Although Defendants suggest that only the duty of confidentiality survives the termination of an attorney-client relationship, it has long been recognized that there is an implied duty of loyalty within the duty of confidentiality. *See T.C. Theatre Corp. v. Warner Bros. Pictures,*

---

[4]     Similarly, the only other case cited in support of this argument in the Motion, *Parker v. Arnold,* 442 So. 2d 273, 276 (Fla. 4th DCA 1983), does not stand for the proposition that no breach of fiduciary duty can ever exist when an attorney-client relationship had ceased. The case merely held that under those facts the former client had not alleged how the activities that the former lawyer undertook following the termination of the relationship gave rise to any cause of action. In trying to decipher a "stream of consciousness" complaint, the court was simply theorizing how the facts alleged could give rise to a legal claim, one of which could have been a breach of fiduciary duty. "As presented, the complaint merely makes a conclusory statement that a fiduciary duty was violated. This is not sufficient." *Id.* The facts in *Parker* is a far cry from the allegations contained in this complaint.

113 F. Supp. 265, 268 (S.D.N.Y. 1953) ("A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer.  He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship.").

As a result, and contrary to Defendants' theory why the Complaint should be dismissed as a matter of law, Florida courts have recognized that an attorney owes both a duty of confidentiality *and* a duty of loyalty to former clients with respect to matters that are substantially related.  In *Brent v. Smathers*, 529 So. 2d 1267, 1269 (Fla. 3d DCA 1988) (citing *Lawyers Manual of Professional Conduct* (BNA) § 51:202 (1987)), the court determined that rule 4-1.9 of the Florida Bar Rules of Professional Conduct, which governs conflicts of interest involving former clients, also imposes upon the lawyer a duty of loyalty.  "Loyalty is an essential element in the lawyer's relationship to a client."  *Id.* (citing Florida Bar Rules of Professional Conduct, rule 4-1.7 comment).

In *Zarco Supply Co. v. Bonnell,* 658 So. 2d 151 (Fla. 1st DCA 1995), the court reversed the denial of a motion for disqualification based in part upon prior representation by a law firm of a former co-client that was a party in the case.  The court expressly found that "[u]nder the Rules Regulating the Florida Bar, attorneys owe a duty of confidentiality and loyalty to their clients, including present and former co-clients."  *Id.* at 153.  Like *Brent,* the court's conclusion relied upon Rule 4-1.9 as the genesis of both the duty of confidentiality and duty of loyalty.

Most persuasively, a decision from the Middle District that reached the same conclusion did so in the face of the attorney's argument that the prior representation was very limited in time and scope.  In *United States v. Culp,* 934 F. Supp. 394 (M.D. Fla. 1996), a lawyer was disqualified based upon his prior representation of a material witness

in the case who would be testifying against the lawyer's present client.   The court's

analysis appears to squarely apply here:

> [Counsel] states in his affidavit, however, that due to the limited nature of
> his representation of [the former client], he learned no information during
> the course of that representation which he could now use against [him]. .
> . . *This argument ignores the fact that under the ethical canons a duty of
> loyalty exists apart and distinct from the duty to maintain client confidences.*
> Compare Model Rules, Rule 1.6 with Rules 1.7 & 1.9.   One need only
> compare Model Rule 1.6, which outlines the lawyer's duty of confidentiality,
> with Model Rule 1.9(a), which imposes a blanket prohibition on the
> representation of clients with interests adverse to those of a former client
> without the former client's consent.   *The prohibition set forth in Rule 1.9
> applies without regard to whether the prior representation entailed the
> disclosure of confidential communications.   The rule thereby furthers two
> purposes simultaneously; it promotes the attorney's duty of loyalty to his
> clients while furthering the objectives of rules protecting confidential
> communications between attorney and client by obviating the need for
> intrusive judicial fact-finding that would require the disclosure of such
> communications.*   The policies underlying this rule are equally relevant here,
> . . .

*Id.* at 398 (emphasis added).

Additional support for the conclusion that an attorney retains a duty of

confidentiality and duty of loyalty can be found in Rule 4-1.10 of the Florida Rules of

Professional Conduct that relates to the imputation of conflicts of interests.   The

Comments to this Rule provide: "The second aspect of loyalty to client is the lawyer's

obligation to decline subsequent representation involving positions adverse to a former

client arising in substantially related matters."   Thus, both Rules 4-1.9 and 4-1.10

support the view that a lawyer's fiduciary duties to former clients includes a duty of

loyalty.   The Bar Rules do not provide a minimum period of representation before this

duty arises.

Therefore, to grant the motion to dismiss this fiduciary duty claim one would have

to accept that, as a matter of law, Florida limits an attorney's fiduciary duties to a former

client to only actual disclosure of confidential communications.   In the face of all this

contrary authority, this Court cannot do so here.  There is a prima facie argument that Defendants owed both duties of confidentiality and loyalty to their former client, which according to the Complaint were breached in this case and resulted in damage.  That is clearly sufficient for Plaintiffs to state a claim for breach of fiduciary duty.

This conclusion is consistent with the findings in the Order Granting Motion to Disqualify Counsel in *Reizen.*  In that Order, Judge Simonton disqualified Defendants from representing Reizen finding that Defendants represented Tambourine in a substantially related matter.  Although Judge Simonton concluded that it was not enough to determine that the matters were substantially related simply because the two pools of $10 million were allegedly misappropriated from the same company, she found that this factor, in combination with others, required Defendants' disqualification.  First, the alleged misappropriation of Plaintiffs' $10 million by Lionheart/Davies occurred close in time to the wrongful activity of Reizen alleged in that case.  Order Grant. Mot. to Disqualify Counsel at 16.  Also, the prior representation, although brief, occurred around the same time as Reizen's alleged theft of the $10 million that Lionheart/Davies returned to Tambourine.  *Id.*  Most importantly, Solowsky raised both matters – the $10 million that were never returned to Tambourine and the $10 million that were allegedly stolen by Reizen after Lionheart/Davies returned it to Tambourine – during settlement negotiations, and he did so in connection with his representation of Reizen.  *Id.*  All these same factors also support Plaintiffs' claim for breach of fiduciary duty given Defendants' continuing duties of loyalty and confidentiality.

There is, of course, a significant causation issue here, because Defendants argue that any damage that Plaintiff suffered was caused by Reizen, not Defendants.  That will be an issue that will have to be addressed at a different stage of the case, and clearly not on the pleadings.  The motion to dismiss this claim must be denied.

### E. _Count VII - Professional Negligence_

Plaintiffs' claim for professional negligence is based on the contention that Defendants were hired in 1999 to help Tambourine find some of its missing money and that, as such, Defendants owed Tambourine a duty of care in performing this task. Plaintiffs note that, in 2003, $6 million of Tambourine's missing money was transferred into Defendants' trust account and that Defendants failed to inform Tambourine of the location of the missing funds.  By doing so, Plaintiffs' contend, Defendants breached a continuing duty of care to Tambourine – consistent with its previous legal employment – to disclose facts relating to the location of Tambourine's funds.  Plaintiffs further argue that the issue here is whether the scope of Defendants' representation of Tambourine encompassed the same subject matter at issue now.

Defendants moved to dismiss this claim because Tambourine's Complaint does not complain about any of Defendants' work during the course of its representation in 1999. They further contend that the Defendant's "duty of care" ended in mid-November 1999 when Defendants' representation of Tambourine ended.   Therefore, there can be no professional negligence claim under the facts alleged here.

A legal malpractice claim has three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff.  _Maillard v. Dowdell_, 528 So. 2d 512, 514 (Fla. 3d DCA 1988) (citing _Maryland Cas. Co. v. Price_, 231 F. 397 (4th Cir. 1917) as adopted in _Weiner v. Moreno_, 271 So. 2d 217 (Fla. 3d DCA 1973)).

"In establishing the first element, the attorney's employment, . . . it is essential to allege the [attorney-client] relationship existed with respect to the acts or omissions upon which the malpractice claim is based."  _Id._ (complaint for legal malpractice properly dismissed because attorney was not hired to investigate separate litigation involving the

property, but rather was hired to represent the purchasers at the real estate closing) (citing *Kurtenback v. TeKippe*, 260 N.W.2d 53 (Iowa 1977)).  *See also Kates v. Robinson*, 786 So. 2d 61, 64 (Fla. 4th DCA 2001) (attorney was only hired to collect the consent judgment, not to discover and collect from anyone else who might be liable for plaintiffs' damages); *Lawyers Prof'l Liab. Ins. Co. v. McKenzie*, 470 So. 2d 752, 753 (Fla. 3d DCA 1985) (plaintiff had to prove attorney was hired for the specific purpose of getting property back and not merely recovering money owed); *Boyd v. Brett-Major*, 449 So. 2d 952, 953 (Fla. 3d DCA 1984) (attorney was hired to delay mortgage foreclosure action and not to win the case).

In its Complaint, Plaintiff Tambourine states that it hired Defendants as legal counsel on October 18, 1999, (Compl. at ¶ 135) to conduct an investigation regarding the funds misappropriated from Tambourine by Lionheart/Davies (Compl. at ¶ 18).  As Tambourine does not allege that Defendants represented it beyond 1999, Tambourine's cause of action for legal malpractice must be dismissed.  Without such an allegation, it is clear that the parties did not have an attorney-client relationship with respect to the $10 million that Lionheart/Davies returned to Tambourine and was later allegedly misappropriated by Reizen.  This claim is clearly different from the breach of fiduciary duty claim because legal malpractice requires that the attorney neglect a duty during the course of his representation.  In contrast, as argued above, a breach of fiduciary duty can be committed after the attorney-client relationship has ended if attorneys have continuing duties of loyalty and confidentiality that have been violated.

Therefore, Defendants are right that under the current allegations of the Complaint a professional negligence claim cannot be asserted.  This claim must be dismissed.

### F.   <u>Count VIII - Negligent Supervision</u>

Finally, Defendants move to dismiss Plaintiffs' claim for negligent supervision because the Firm did not represent Plaintiffs at the time of Solowsky's alleged wrongdoing and that Plaintiffs have failed to allege any facts demonstrating that the Firm became aware, or should have become aware, of any alleged problems with Solowsky.  Plaintiffs counter that an attorney-client relationship is not required to support an actionable duty of care.  They also point out that the Complaint's allegations satisfy all the elements of a negligent supervision claim.

To state a claim for negligent supervision, a plaintiff must allege the elements of ordinary negligence.  *Roberson v. Duval County Sch. Bd.*, 618 So. 2d 360, 362 (Fla. 1st DCA 1993).  For example, plaintiff must allege: (1) the existence of a duty on the part of the defendant to protect the plaintiff from the injury or damage of which he complains; (2) failure of the defendant to perform that duty; and (3) injury or damage to the plaintiff proximately caused by such failure.  *Mercado v. City of Orlando*, 323 F.Supp.2d 1266, 1278 (M.D. Fla. 2004).

Plaintiffs allege that Defendants owed Plaintiffs a cognizable duty of care "arising out of its legal representation of Tambourine and its receipt and possession of Plaintiffs' funds in its client trust accounts."  Compl. at ¶ 142.  The Complaint further alleges that "Pertnoy, P.A . . . . became aware, or should have become aware, of Solowsky's misconduct regarding Plaintiffs' funds, and yet failed to take any action."  Compl. at ¶ 144.  Plaintiffs note that the Complaint further supports this allegation by stating that Pertnoy, P.A., failed to question Solowsky's suspicious opening of a separate and second client trust account into which Tambourine's money was later deposited.  Compl. at ¶¶ 39, 40.  The Complaint also alleges that despite knowing, at least as of December 2005, about Solowsky's misconduct regarding the concealment and dissipation of Plaintiffs'

funds through Defendants' trust account, Pertnoy, P.A., failed to take any corrective action and continues to hold over $1.4 million of Plaintiffs' funds.  Compl. at ¶¶ 76-86, 144.

Based on these allegations, and the fact that common law torts survive the motion to dismiss, the Court finds that Plaintiffs have sufficiently pled a cause of action for negligent supervision.  Whether Defendants' actions or omissions were a breach of Defendant Pertnoy, P.A.'s duty of care based on its prior representation of Tambourine is a question to be decided later when evidence of the scope of Defendants' attorney-client relationship with Tambourine is introduced.

### IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     Defendants' Motion to Dismiss Counts I, VI, VIII of the Complaint is **DENIED**.  This Order denying the motion to dismiss as to these counts is not intended to be a dispositive order with respect to the issues raised, and is without prejudice to the Defendants raising any and all related factual or legal issues in subsequent stages of the case. The parties nevertheless have the right to appeal/object to any part of this Order pursuant to S.D. Fla. Mag.J. R. 4(b) and seek *de novo* review from the District Judge as per 28 U.S.C. § 636(b)(1) (*de novo* review for disposition of motions to dismiss).

a.     Any appeal/objection to this Order shall be filed within ten (10) days from the date this Order is entered.

b.     In the event an appeal/objection is not filed by any party in the action, Defendants shall have twenty (20) days from the date of this Order to file its Answer and defenses to the Amended Complaint that shall be filed as set forth below.

c.     In the event an appeal/objection is filed by any party to this action, the time for Defendants to file their answer shall be tolled pending resolution of any such appeal/objection by the District Judge.

2.     Defendants' Motion to Dismiss Counts III, IV, V, and VII should be Granted without prejudice and with leave to amend but in accordance with the analysis set forth herein. Accordingly, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED IN PART** with respect to these claims.

a.     Pursuant to S.D. Fla. Mag.J. R. 4(b), the parties have ten (10) days from the date of this incorporated Report and Recommendation to serve and file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the incorporated Report and Recommendation and bar the parties from attacking on appeal the findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

b.     In the event the parties do not file any such objections, Plaintiffs shall have ten (10) days from the Date of this Report to serve an amended complaint that shall raise any and all claims in the case in accordance with the Order set forth above and this Report.

**DONE, ORDERED AND SUBMITTED** in Chambers at Miami, Florida, this 4th day of March 2007.

EDWIN G. TORRES
United States Magistrate Judge